**SO ORDERED.**

**SIGNED this 28th day of February, 2020.**

_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Moore Properties of Person County, LLC, | ) ) | Case No. 20-80081 |
| | ) | Chapter 11 |
| Debtor. | | |

### MEMORANDUM ORDER OVERRULING OBJECTION OF BANKRUPTCY ADMINISTRATOR TO DEBTOR'S SMALL BUSINESS DESIGNATION UNDER RULE 1020

This case came before the Court for hearing on February 25, 2020, on the Objection of Bankruptcy Administrator to Debtor's Designation as Small Business Debtor (the "Objection"), ECF No. 14. At the hearing, James White appeared on behalf of Moore Properties of Person County, LLC ("Debtor"), and William P. Miller appeared as the Bankruptcy Administrator ("BA").[1] ECF No. 31. For the reasons set forth herein, the Court will overrule the Objection.

---

[1] After the hearing, the BA filed a Notice of Appointment of Subchapter V Trustee, ECF No. 30, appointing Richard M. Hutson, II as the Subchapter V Trustee in this case. Mr. Hutson attended the hearing on February 25, 2020, telephonically.

1

## Jurisdiction

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. Under 28 U.S.C. § 157(a), the United States District Court for the Middle District of North Carolina has referred this case and this proceeding to this Court by its Local Rule 83.11. This is a statutorily core proceeding under 28 U.S.C. § 157(b)(1), (b)(2)(A), and (b)(2)(O). The Court has constitutional authority to enter this Order.

## Findings of Fact

On February 10, 2020, Debtor filed a voluntary petition for relief under chapter 11. Debtor owns three separate parcels of real property, which it leases to third parties who engage in farming operations.[2] ECF No. 1 at 9. Debtor has no business operations outside of its leasing of the real properties and matters incidental thereto.[3] ECF Nos. 27 and 31.

The petition was precipitated by two pending foreclosure actions, one against each of Debtor's properties. ECF No. 1 at 23, Official Form 207 Statement of Financial Affairs for Non-

---

[2] At the Hearing, the BA and Debtor's counsel stated that at least two of the parcels are not continuous, and secure separate obligations owed by Debtor to Carolina Farm Credit, ACA.

[3] In the petition, Debtor described its business under the North American Industry Classification System four digit code, 5311, which is classified as "Lessors of Real Estate." According to the schedules, Debtor owns three plots of land valued at a total of $292,394, but owns no other assets, such as machinery, inventory, or investments, to indicate any other operations aside from real estate.

2

Individuals Filing for Bankruptcy.  In its statement filed with the petition under Fed. R. Bankr. P. 1020(a), Debtor stated that it is a small business debtor as defined in 11 U.S.C. § 101(51D).[4]

Local Rule 3003-1(a) provides that proofs of claims for non-governmental units in a chapter 11 case shall be filed within 90 days of the first date set for the meeting of creditors under 11 U.S.C. § 341(a).  On February 11, 2020, the Clerk of Court issued a notice (the "Claims Notice") consistent with this rule, directing non-governmental creditors to file proofs of claims on or before June 11, 2020.  ECF No. 10.  The Bankruptcy Noticing Center served the Claims Notice on all creditors on February 13, 2020.  ECF No. 16.[5]

On February 13, 2020, the BA objected under Fed. R. Bankr. P. 1020(b) and 11 U.S.C. § 101(51D) to Debtor's designation of itself as a small business debtor on its petition.  ECF No. 14.  In the Objection, the BA asserted that Debtor failed to meet the

---

[4] The Bankruptcy Administrator filed a memo on the docket stating that no unsecured creditors committee would be formed due to the insufficient number of creditors who had filed claims.  ECF No. 9.  Debtor has remained a debtor in possession throughout the case.

[5] The proof of claim deadline in cases under subchapter V of chapter 11 is different.  Local Rule 3003-1(b) provides, "except as otherwise specified by order of the court," the bar date for non-governmental proofs of claim in a case under subchapter V case is 70 days after the order for relief.  Because the Clerk has issued a notice in this case setting the proof of claim deadline consistent with Local Rule 3003-1(a), the Court finds that there is cause to issue an order setting the deadline as noticed, and will enter a separate order to that effect.

definition of a small business debtor on the petition date because it primarily owned and managed real property.

On August 23, 2019, the President signed the Small Business Reorganization Act of 2019 (the "SBRA" or the "Act"), thereby effectuating its enactment. Pub. L. No. 116-54, 133 Stat. 1079 (2019). Section 5 of the SBRA provides in full: "This Act and the amendments made by this Act shall take effect 180 days after the date of enactment of this Act." § 5, 133 Stat. 1079, 1087. Therefore, the SBRA became effective on February 19, 2020. In its central purpose, the SBRA added a new subchapter V to chapter 11 as an elective chapter for small business debtors for whom the existing provisions of chapter 11 were not providing effective relief.[6]

Five days after the SBRA became effective, Debtor filed an amended petition (the "Amended Petition") under Fed. R. Bankr. P. 1009(a), ECF No. 24, amending its statement under Fed. R. of Bankr. P. 1020(a), still designating itself as a small business, but electing to proceed under the newly effective subchapter V of chapter 11. Id. at 2. At the hearing on February 25, 2020, no

---

[6] See Oversight of Bankruptcy Law and Legislative Proposals: Hearing Before the Subcomm. on Antitrust, Commercial, & Admin. Law of the H. Comm. on the Judiciary, 116th Cong. (2019) (Revised Testimony of A. Thomas Small on Behalf of the National Bankruptcy Conference in support of H.R. 3311); American Bankruptcy Institute Commission To Study the Reform Of Chapter 11, 2012-2014 Final Report And Recommendations 275-78 (2014); Could Bankruptcy Reform Help Preserve Small Business Jobs: Hearing Before the Subcomm. on Admin. Oversight and the Courts of the S. Comm. on the Judiciary, 108th Cong. (2010) (Testimony of A. Thomas Small on behalf of the National Bankruptcy Conference).

party objected to Debtor's amended election to proceed under subchapter V, and according to the BA, Debtor's only secured creditor, Carolina Farm Credit, does not object either to Debtor's designation as a small business or to Debtor's election to proceed under subchapter V.  With the exception of the Claims Notice, no procedural or substantive rights have vested in this nascent case in a manner that will prejudice any party in interest, and no creditor will be prejudiced by the application of the provisions of the SBRA to this case or by the change in Debtor's statement electing to proceed under subchapter V.

## Discussion

The parties in this case present two issues: (1) may Debtor, whose case was pending on the effective date of the SBRA, elect to proceed under subchapter V of chapter 11; and (2) is Debtor, who did not meet the definition of a small business debtor on the petition date, eligible to proceed under subchapter V when it now meets that definition under the SBRA?  Because Debtor only meets the definition of a small business debtor to the extent that the SBRA applies, these issues bleed into one another, and the Court will consider the general applicability of the SBRA to this case first.

As it is stated above, the first issue presented to the Court does not accurately reflect the legal considerations before the Court in considering the applicability of the SBRA to existing

5

cases, and therefore may perpetuate confusion. Commentators have discussed this issue as whether subchapter V of chapter 11 will apply to cases pending before the February 19, 2020 effective date.[7] This is not the correct formulation of the issue, and therefore creates confusion about what might or might not constitute retroactive application of new law. To assume that subchapter V applies to all aspects of pre-existing debtor-creditor relationships so long as the case is commenced after that date overlooks the parties' contractual and property rights and expectations in place on the effective date of the SBRA. With the exception of debtor-creditor relationships formed on or after February 19, 2020, for the reasons set forth below, the issue is whether newly created subchapter V may properly be applied to affect those pre-existing rights. If so, the Court should apply the law as it currently exists.

The Supreme Court has articulated the canons of statutory construction that courts should consider when determining whether

---

[7] This confusion likely stems from the distinction in the effective date language for the SBRA as compared to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Pub. L. 109-8, (Apr. 20, 2005) ("BAPCPA"). Under § 1501(b) of BAPCPA, and unlike the SBRA, Congress specifically limited its application to cases commenced after its effective date by providing that it would not apply "with respect to cases commenced under title 11, United States Code, before the effective date of this Act." Although Congress specifically prohibited BAPCPA from applying to existing cases, the provisions of § 1501 do not affect the rubric required by the Supreme Court in determining whether amendments apply to pre-existing contractual relations or property rights as set forth herein. Nothing in the SBRA prevents its application in existing cases.

to apply new law, or newly amended law, to prior conduct.  In Landgraf v. USI Film Products, 511 U.S. 244, 114 S. Ct. 1483 (1994), the Court considered whether amended provisions of Title VII of the Civil Rights Act of 1964,[8] as implemented by the Civil Rights Act of 1991 (the "1991 Amendments"),[9] applied to claims based on conduct occurring prior to the enactment of the amendments.  The enactment of the 1991 Amendments became effective after the conclusion of a bench trial in which the district court dismissed the plaintiff's claims, and during the pendency of plaintiff's appeal.  Id. at 248-49, 114 S. Ct. at 1488-89.  These amendments would have entitled the plaintiff to a jury trial and expanded the scope of the Act and the remedies available thereunder.  Id. at 250-52, 114 S. Ct. at 1489-90.  The plaintiff demanded that the matter be remanded for a jury trial and to consider the award of additional damages under the amendments. Id.  The Court granted certiorari to determine "whether the Court of Appeals should have applied the law in effect at the time the discriminatory conduct occurred, or at the time of its decision in July 1992."  Id. at 250, 114 S. Ct. 1489.

Similar to the effective language of the SBRA, the 1991 Amendments in Landgraf did not expressly provide whether the

---

[8] Rev. Stat. § 1977A(a), 42 U.S.C. § 1981a(a) (1988 ed., Supp. IV).

[9] Pub. L. 102-166, 105 Stat. 1072 § 102 (1991).

7

amendments would apply to prior conduct. The 1991 Amendments provided that "this Act and the amendments made by this Act shall take effect upon enactment." Id. at 257, 114 S. Ct. 1493. The Court found that "[a] statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date." Id.

Concluding that the statutory language did not dictate an answer, the Court cited two potentially conflicting canons that guide courts when determining the effect of intervening changes in the law governing prior conduct. First, "a court is to apply the law in effect at the time it renders its decision." Id. at 264 (quoting Bradley v. School Bd. Of Richmond, 416 U.S. 696, 711 (1974)). Second, "[r]etroactivity is not favored in the law," and "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." Landgraf, 511 U.S. at 264 (quoting Bowen v. Georgetown Univ. Hospital, 488 U.S. 204, 208 (1988)). The presumption against retroactivity stems from "[e]lementary considerations of fairness . . . that individuals should have an opportunity to know what the law is and to conform their conduct accordingly," and the principle that "settled expectations should not be lightly disrupted." Landgraf, 511 U.S. at 265. Accordingly, the presumption against retroactivity particularly

8

applies to "new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance." Id. at 271 (citing, inter alia, United States v. Sec. Indus. Bank, 459 U.S. 70, 79-82, 103 S. Ct. 407, 413-14 (1982)).

In Security Industrial Bank, the Court gave more specific guidance for courts considering the application of newly minted bankruptcy provisions that may affect pre-existing contractual or property rights. In that case, the Court considered whether a debtor could utilize the newly enacted Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 (the "1978 Act"), to entirely avoid a non-possessory, purchase-money lien that could not have been avoided under the provisions of prior bankruptcy law where the underlying obligation arose prior to the effective date of the 1978 Act. 459 U.S. at 71-72, 103 S. Ct. 409. The Court began by recognizing that the constitutional bankruptcy power under Article I Section 8, Clause 4 "has been regularly construed to authorize the retrospective impairment of contractual obligations," but recognized the "additional difficulty that arises when that power is sought to be used to defeat traditional property interests." Id. at 410, 103 S. Ct. 74-75 (citing Hanover Nat. Bank v. Moyses 186 U.S. 181, 22 S. Ct. 857 (1902)). The Court therefore drew a distinction between the permissibility of applying new bankruptcy provisions to modify existing contractual

9

rights, and the impermissibility of applying that power to defeat vested "traditional property interests."  Id. (observing that the latter implicated the Fifth Amendment's prohibition against taking private property without just compensation, and rejecting the government's argument that property rights were no more protected than contractual rights in the bankruptcy context because contract rights are merely a form of property rights).  The Court further illustrated this distinction in the context of secured creditors: "[T]he contractual right of a secured creditor to obtain repayment of his debt may be quite different in legal contemplation from the property right of the same creditor in the collateral."  Id. at 75, 103 S. Ct. at 411.  The Court concluded that the avoidance of the lien under the new law crossed this line into impermissibly creating a retroactive taking of a vested property interest because the avoidance "would result in a complete destruction of the property right of the secured party."  Id.

The application of subchapter V in this case creates none of the taking or retroactivity concerns expressed by the Court in Landgraf and Security Industrial Bank.  Subchapter V incorporates most of existing chapter 11, and, with two main exceptions of no effect here, does not alter the rubric under which debtors may affect pre-petition contractual rights of creditors, much less vested property rights.

The central vehicle for modifying pre-petition contractual relationships in chapter 11 is through the provisions of a confirmed plan.[10] The required and permissible provisions of a chapter 11 plan are contained in existing 11 U.S.C. § 1123, which applies unaltered under subchapter V with three exceptions. Section 1181(a) excludes § 1123(a)(8)[11] from the provisions which may be included in a plan, and excludes the requirements of § 1123(c).[12] Section 1190(3) further creates an exception to the anti-modification provision in § 1123(b)(5) by permitting the modification of the rights of the holder of a secured claim secured solely by a security interest in the principal residence of the debtor if the obligation is not purchase money and the new value received was used primarily in connection with the debtor's small business. Even if the bankruptcy power could not be used to alter pre-existing contractual rights, these exclusions do not alter

---

[10] Subchapter V largely incorporates the general provisions already applicable under chapters 1, 3, and 5 of the Bankruptcy Code, and any exceptions are inapplicable here. As set forth above, the SBRA amended the definition of "small business debtor" under chapter 1, but that revision does not affect contractual or vested property rights any more than the general availability of subchapter V.

[11] Section 1123(a)(8) requires an individual debtor to contribute post-petition earnings as necessary for execution of the plan.

[12] Section 1123(c) prohibits a third-party plan from providing for the use of exempt property in an individual case.

such rights,[13] and the exception to the anti-modification provision in § 1123(b)(5) is inapposite here.[14]

Subchapter V also modifies the requirements for a chapter 11 small business debtor that elects its application to obtain a confirmed plan. The existing requirements for confirmation are set forth under § 1129. Under § 1191(a), the debtor must meet all the existing requirements for confirmation under § 1129(a) with the exception of § 1129(a)(15) that is inapposite.[15] Under § 1191(b), a subchapter V debtor may confirm a plan without acceptance by at least one accepting impaired class as otherwise required by § 1129(a)(10) so long as the plan does not discriminate unfairly and is fair and equitable to the dissenting class. With

---

[13] Section 1123(a)(8) is rendered superfluous by newly effective § 1190(2), which requires any debtor to contribute earnings as necessary for execution of the plan. Section 1123(c) is inapplicable because only the debtor may propose a plan under subchapter V. 11 U.S.C. § 1189(a). Neither of these provisions alters pre-existing contractual rights, and even if either did, such alteration is permissible under the bankruptcy power. Sec. Indus. Bank, 459 U.S. 74-75.

[14] The exception to the anti-modification provision does not prohibit the availability of subchapter V to Debtor in this case for at least two reasons. First, it will be the rare case in which the exception applies, but it does not apply here in any event. There is only one secured creditor, and the debtor is an artificial entity without a principal residence. Second, even if there were such a lien in this case, the issue would be whether the application of 1190(3) constitutes and impermissible taking, and, if so, the court would not apply that provision, rather than declaring the entirety of subchapter V inapplicable. Cf. Sec. Indus. Bank, 459 U.S. 70 (declaring the application of § 522(f) to pre-existing liens to constitute an impermissible taking, but not dismissing the entire underlying bankruptcy case under the 1978 Act). Nevertheless, for the first reason, the Court need not consider the effect of § 1190(3) in this case.

[15] Section 1129(a)(15) applies only in individual cases. Debtor is not an individual. With respect to plans confirmed without acceptance by all impaired classes, even in individual cases, § 1191(c) renders this section largely superfluous in cases under subchapter V.

12

the exception of the removal of the requirement of an accepting impaired class, this is the same standard for confirmation under existing § 1129(b), but subchapter V amends the definition of "fair and equitable" for classes of unsecured creditors and interests by substituting the disposable income requirement in lieu of the absolute priority rule under § 1129(b)(2)(B) and (C), respectively.

The alteration of the definition of fair and equitable in an existing case does not, standing alone, amount to an impermissible retroactive taking. To the extent that a case were pending for an extended period of time on the effective date of the SBRA, it is possible that a case could be sufficiently advanced that the substantive alterations in the requirements for plan confirmation arise to a taking of a vested property rights. This is not such a case and the Court need not consider here the extent to which parties in interest may have so invested in such a case or the court may have entered orders that created sufficient vested property interests or post-petition expectations to prevent the application of subchapter V to those rights or make its application offend "[e]lementary considerations of fairness" such that the parties "have an opportunity to know what the law is and to conform their conduct accordingly." Landgraf, 511 U.S. at 265, 114 S. Ct. at 1497. Nothing of that sort has occurred in this case. See In re Progressive Solutions, Inc., Case No. 8:18-bk-14277-SC, p. 8

(Bankr. C.D.Cal. Feb. 21, 2020) (finding that debtor could amend its election to proceed under subchapter V where no creditor "had rights that were vested by rulings of the Court, [and where no] other events [had occurred] . . . that would be disturbed by the designation of the case as a Subchapter V case").

For these reasons, the Court concludes that this is not a case in which the Court is asked to apply new law retroactively in violation of the mandates of <u>Landgraf</u> or <u>Security Industrial Bank</u>. Therefore, the Court is guided and governed by the obligation to apply the law in effect at the time it has been asked to render its decision.

### Is the Debtor a Small Business Debtor?

On the petition date, the term "small business debtor" was defined as follows:

> **(51D)** The term "small business debtor"--
> **(A)** subject to subparagraph (B), means a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and <u>excluding a person whose primary activity is the business of owning or operating real property or activities incidental thereto</u>) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $2,000,000 (excluding debts owed to 1 or more affiliates or insiders) for a case in which the United States trustee has not appointed under section 1102(a)(1) a committee of unsecured creditors or where the court has determined that the committee of unsecured creditors is not sufficiently active and representative to provide effective oversight of the debtor;

14

11 U.S.C. § 101(51D) (emphasis added). Debtor did not constitute a small business under this definition on the petition date because its primary operation was the business of owning and leasing real property.[16]

Under Fed. R. Bankr. P. 1020(a), a debtor must state in its bankruptcy petition "whether the debtor is a small business debtor and, if so, whether the debtor elects to have subchapter V of chapter 11 apply." <u>See</u> Interim Rule of Bankruptcy Procedure No. 1020(a), implementing the Small Business Reorganization Act of 2019 (collectively the "Interim Rules," and individually "Interim Rule #"). Despite failing to meet the definition of a small business on the petition date, Debtor stated that it is a small business on its petition. "[T]he status of the case as a small business case or a case under subchapter V of chapter 11 shall be in accordance with the debtor's statement under this subdivision, <u>unless and until</u> the court enters an order finding that the debtor's statement is incorrect."[17] <u>Id.</u> (emphasis added). After

---

[16] At the hearing, no party contested that Debtor was incorrect in designating itself as a small business debtor, or that it now would qualify as one under the SBRA.

[17] At the time Debtor filed the petition, the language of Rule 1020(a) was as follows:

> In a voluntary chapter 11 case, the debtor shall state in the petition whether the debtor is a small business debtor. In an involuntary chapter 11 case, the debtor shall file within 14 days after entry of the order for relief a statement as to whether the debtor is a small business debtor. Except as provided in subdivision (c), the status of the case as a small business case shall be in accordance with the debtor's statement under this subdivision,

15

a Debtor elects to be a small business debtor, "[t]he United States trustee or a party in interest may file an objection to the debtor's statement under subdivision (a) no later than 30 days after the conclusion of the meeting of creditors held under § 341(a) of the Code, or within 30 days after any amendment to the statement, whichever is later." Id. at (b). Put simply, the original designation controls unless and until the court enters an order finding that a debtor's election is incorrect, and such "review is triggered by an objection to the designation." See In re Angel Fire Water Co., LLC, 2015 Bankr. LEXIS 170, at *14 (Bankr. D. N.M. Jan. 20, 2015) (citing Fed. R. Bankr. P. 1020(a) and finding that because Debtor never elected to be a small business debtor and no party objected to its status, it would be "[in]appropriate in [the] case to alter Debtor's statement sua sponte"); In re Maxx Towing, Inc., 2011 Bankr. LEXIS 2826 (Bankr. E.D. Mich. July 27, 2011)(finding Debtor to be a small business debtor and administering the case as such because (1) no objections were raised by the United States Trustee or any interested party, and (2) Debtor never sought to amend the designation); In re Castle Horizon Real Estate, LLC, 2010 Bankr. LEXIS 2900, *5-6 (Bankr.

---

unless and until the court enters an order finding that the debtor's statement is incorrect.

(emphasis added). This language is the same language provided in Interim Rule 1020(a) and has the same corresponding effect. Debtor's initial designation as a small business debtor, under either Rule 1020(a) or Interim Rule 1020(a), governs unless and until the Court orders otherwise.

16

E.D.N.C. Sept. 10, 2010) (nothing in the rule suggests that a change to the designation either by the debtor or by the court is retroactive); See 9 Collier on Bankruptcy ("Collier") ¶ 1020.03 (16th ed. 2019). Therefore, through the date of the hearing on the BA's objection, Debtor was a small business debtor.

Among other amendments, the SBRA changed the definition of "small business debtor." Under the SBRA, the definition of small business now only excludes those owners of real property that constitute "single asset real estate." As defined under 11 U.S.C. § 101(51B) and as relevant to this case, single asset real estate ("SARE") is limited to real property constituting a single property . . .." Debtor's property consists of at least two separate parcels, each generating Debtor's revenue. Therefore, Debtor's property is not SARE, and Debtor meets the definition of a small business debtor as of the date of the hearing on the BA's objection, and is entitled to elect application of subchapter V.

Under Fed. R. Bankr. P. 1009,

> [a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby. On motion of a party in interest, after notice and a hearing, the court may order any voluntary petition, list, schedule, or statement to be amended and the clerk shall give notice of the amendment to entities designated by the court.

As such, "an amendment to a Bankruptcy Petition can be made at any time as a matter of course at any time before the case is closed."

17

<u>In re Progressive Solutions, Inc.</u>, Case No. 18-14277, ECF No. 157, p. 11 (Bankr. C.D. Cal. Feb. 21, 2020).  Therefore, Debtor was entitled to amend its statement to elect subchapter V.[18]

For the reasons set forth above, Debtor designated itself as a small business debtor on the petition date, and that designation controls unless and until the Court determines that it is incorrect.  As of the date of the hearing in this case, the designation was not incorrect, and the Debtor is a small business debtor.  As a small business debtor, Debtor was entitled to make the election to have subchapter V apply.  <u>See</u> 11 U.S.C. § 103(i).  The BA's objection therefore is overruled.

[END OF DOCUMENT]

---

[18] In a case that is further along, such an amendment to elect subchapter V might carry serious consequences for a debtor.  For example, § 1189(a) requires a debtor to file a plan within 90 days of the order for relief, and the court only may extend this deadline if the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable.  11 U.S.C. § 1189(b).  To the extent that a debtor amends its election at a point in the case in which it creates cause to dismiss or convert the case under § 1112(b)(4)(J) or otherwise, a debtor's case will be in peril.  Late amendments, even if permissible under the standards and prohibitions against retroactivity discussed above, may also create discord with creditors or other parties in interest, including without limitation, a subchapter V trustee, the Bankruptcy Administrator, or United States Trustee, that may adversely affect the advancement of the case or the ability of the debtor to effectuate a plan.

**PARTIES TO BE SERVED**

Moore Properties of Person County, LLC
125 Duck Pointe Dr
Roxboro, NC 27574

James C. White
J.C. White Law Group PLLC
100 Europa Drive, Suite 401
Chapel Hill, NC 27517

William P. Miller
Bankruptcy Administrator
101 South Edgeworth Street
Greensboro, NC 27401

Richard M. Hutson, II
Chapter 13 Office
3518 Westgate Drive
Suite 400
Durham, NC 27707

Betty Moore
125 Duck Pointe Dr.
Roxboro, NC 27574

Carolina Farm Credit, ACA
Attn: Jon Almond
PO Box 1827
Statesville, NC 28625

D. Michael Parker
PO Box 100
Hillsborough, NC 27278

Daniel C. Bruton
PO Box 21029
Winston Salem, NC 27120

Flat River Hemp Company
Attn: Managing Agent
500 Westover Dr. Suite 8561
Sanford, NC 27330

Hos Farms, LLC
7629 Valley Run Dr.
Raleigh, NC 27615

```
Insolvency Division
Internal Revenue Service
4905 Koger Blvd. Suite 102
Greensboro, NC 27407

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101

Jason Moore
1710 Ben Wilson Rd.
Mebane, NC 27302

Jerry Moore
125 Duck Pointe Dr.
Roxboro, NC 27574

North Carolina Department of Revenue
Attn: Bankruptcy Unit
PO Box 1168
Raleigh, NC 27602
Person County Tax Collector
Attn: Managing Agent
PO Box 1701
Roxboro, NC 27573

Richard J. Kania
The Kania Law Firm
600-A Centre Park Dr.
Asheville, NC 28805

Waddell Richmond
DBA Richmond's Lawn Service
Attn: Managing Agent
796 Wheelers Church Rd.
Hurdle Mills, NC 27541
```